**E-FILED**
Friday, 28 September, 2007  02:03:15 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

| | | |
|---|---|---|
| **GATEWAY STUDIOS, LLC.** | ) | |
|                **Plaintiff,** | ) | |
|   **vs.** | ) | **Civil Action No. 07-2097** |
| | ) | |
| **MBA ENTERPRISES-2, INC. and** | ) | **Demand for Jury Trial** |
| **RAHMATHULLAH ARIFF,** | ) | |
|                **Defendants.** | ) | |

_____

| | |
|---|---|
| **MBA ENTERPRISES-2, INC.** | ) |
|                **Counter Plaintiff,** | ) |
|   **vs.** | ) |
| | ) |
| **GATEWAY STUDIOS, LLC.** | ) |
|                **Counter Defendant.** | ) |

_____

| | |
|---|---|
| **MBA ENTERPRISES-2, INC.** | ) |
|                **Third Party Plaintiff,** | ) |
|   **vs.** | ) |
| | ) |
| **RICHARD CHEROSKE,** | ) |
|                **Third Party Defendant.** | ) |

_____

## ANSWER TO COMPLAINT and COUNTER CLAIM FOR
## DAMAGES AND POSSESSION OF REAL PROPERTY and
## <u>THIRDY PARTY COMPLAINT AGAINST GUARANTOR</u>

NOW COMES the Defendants, MBA Enterprises-2, Inc. and Rahmathullah Ariff, by and through, Attorney Daniel Brown, and in response to the Complaint filed in the above stated cause, hereby states as follows:

### COUNT I

1.  The Defendants have insufficient information to either admit or deny the allegation contained in Paragraph 1 and hereby demand strict proof thereof.

2.  The Defendants have insufficient information to either admit or deny the allegation contained in Paragraph 2 as it relates to the amount in controversy claimed by the Plaintiff exceeds $100,000.00.  However, as set forth herein, the Counter claim asserted by the Defendant against the Plaintiff exceeds $100,000.00.

3.  The Defendants admit the allegation contained in Paragraph 3.

4.  The Defendants have insufficient information to either admit or deny the allegation contained in Paragraph 4 and hereby demand strict proof thereof.

5.  The Defendants denies that the Plaintiff began investigating the rental and purchase of the hotel property in February 2006 and hereby affirmatively state that negotiations directed toward said agreements began during the summer months of 2005.  The Defendants admit that the Plaintiff inspected the property in February 2006 and further admit that there were discussions regarding the heating and cooling system.

6.  The Defendants deny that at the time of the Plaintiff's inspection the air conditioning was functioning, and hereby affirmatively state that in February of 2006, the hotel property was operating with its heating system functioning.  The Defendants further affirmatively state that the heating and cooling system operating at the business property which is the subject matter of this action, operates under what is commonly referred to as two-pipe system; the same pipes that deliver cooling water to the system during the summer months also deliver heated water to the system during the winter months.  The Defendants deny that the system had to be shut down to test the pipes that circulate the cooling or heating system in the property.

7.  The Defendants admit the allegation contained in Paragraph 7.

8. The Defendants have insufficient information to either admit or deny that the Plaintiff examined the roof for signs of leakage. The Defendant admits that there were discussions regarding the roof.

9. The Defendants have insufficient information to either admit or deny the allegations contained in Paragraph 9 regarding the Plaintiff's financial analysis of converting the property to a long term stay hotel; the Defendants admit that the Plaintiff entered into the Lease Agreement and option to purchase attached to the Plaintiff's complaint.

10. The Defendants deny the allegation contained in Paragraph 10 and each sub-part thereof and hereby demands strict proof thereof.

11. The Defendants deny the allegation contained in Paragraph 11 and each sub-part thereof and hereby demands strict proof thereof.

12. The Defendants deny the allegation contained in Paragraph 12 and hereby demands strict proof thereof.

13. The Defendants deny the allegation contained in Paragraph 13 and each sub-part thereof and hereby demands strict proof thereof.

14. The Defendants deny the allegation contained in Paragraph 14 and hereby demands strict proof thereof.

15. The Defendants deny the allegation contained in Paragraph 15 and hereby demands strict proof thereof.

16. The Defendants deny the allegation contained in Paragraph 16 and hereby demands strict proof thereof.

17.  The Defendants deny the allegation contained in Paragraph 17 and hereby demands strict proof thereof.

18.  The Defendants deny the allegation contained in Paragraph 18 and hereby demands strict proof thereof.

19.  The Defendants deny the allegation contained in Paragraph 19 and hereby demands strict proof thereof.

WHEREFORE, the Defendants, MBA Enterprises-2, Inc. and Rahmathullah Ariff, hereby respectfully move this Honorable Court for a judgment in their favor, for the cost of suit and for such other and further relief as the Court deems necessary and proper.

## COUNT II

1-19.  The Defendants hereby reassert their responses to Paragraph 1 through 19 in Count I as their response to Paragraphs 1 through 19 in Count II.

20.  The Defendants have insufficient information to either admit or deny the allegation contained in Paragraph 20 and hereby demand strict proof thereof.

21.  The Defendants neither admit nor deny the allegation contained in Paragraph 21 and hereby demand strict proof thereof.

WHEREFORE, the Defendants, MBA Enterprises-2, Inc. and Rahmathullah Ariff, hereby respectfully move this Honorable Court for a judgment in their favor, for the cost of suit and for such other and further relief as the Court deems necessary and proper.

## COUNTER CLAIM FOR DAMAGES
## AND POSSESSION OF PREMISES

Now comes the Counter Plaintiff, MBA Enterprises-2, Inc, an Illinois Corporation, by and through its attorney, Daniel D. Brown, complaining against the Counter Defendant, Gateway Studios, LLC, a Nevada LLC, states as follows:

This Counter claim is brought seeking rent and possession of the premises occupied by the Counter Defendant, Gateway Studios, LLC, a Nevada LLC.  The Counter Defendant obtained possession of the premises on or about May 1, 2006, pursuant to a lease agreement dated April 14, 2006.  However, since November of 2006, the Counter Defendant has failed to comply with the terms of the agreement and has breached their financial obligation to the Counter Plaintiff.  The Counter Plaintiff seeks damages and possession of the premises.

### COUNT I -
### (Counter Claim for Damages/Rent)

1.  This Court has jurisdiction of the subject matter of this action pursuant to diversity jurisdiction under 28 USC 1322(a)(1); pursuant to Illinois law, this counter claim would be required to be joined in this action.

2.  The amount in controversy exceeds $100,000.00

3.  That the Counter Plaintiff, MBA Enterprises-2, Inc, an Illinois Corporation, is and has been for some time entitled to possession of a parcel of property located at 1505 N. Neal, Champaign, Illinois, pursuant to a long term lease agreement.

3.  That pursuant to the terms of an agreement with the Counter Plaintiff, MBA Enterprises-2, Inc, an Illinois Corporation, the Counter Defendant, Gateway Studios, LLC, a Nevada LLC, rented the aforesaid premises from the Counter Plaintiff for the

amount of $9,500 per month, plus additional payments and consideration payable by the Counter Defendant. (See attached copy of Lease Agreement, attached hereto and marked as Exhibit A).

4.   That the Counter Defendant is currently in possession of the premises.

5.   The Counter Defendant has breach the terms of the aforesaid rental agreement in that the Counter Defendant has failed to pay the monthly rent obligation and further failed to satisfy their share of the real estate taxes due on the property.  That there is currently due to the Counter Plaintiff rents totaling $104,000.00, through September 1, 2007, plus additional payments and consideration payable by the Counter Defendant for use and occupancy of the premises for the months the Counter Defendant has been in possession of the aforesaid premises.  The Counter Defendant is further obligated to reimburse the Counter Plaintiff an amount in excess of $20,000.00 representing the Counter Defendant's share of the 2006 real estate taxes due during the 2007 year.

WHEREFORE, the Counter Plaintiff, MBA Enterprises-2, Inc, an Illinois Corporation, prays for judgment against the Counter Defendant, Gateway Studios, LLC, a Nevada LLC, in the amount of $124,000.00, plus the additional rents due from the Counter Defendant through the date the premises are surrendered to the Counter Plaintiff and further moves for such other and further relief as the court deems necessary and proper.

## COUNT II
### (Counter Claim seeking Possession)

Now comes the Counter Plaintiff, MBA Enterprises-2, Inc, an Illinois Corporation, by and through its attorney, Daniel D. Brown, complaining against the Counter Defendant, Gateway Studios, LLC, a Nevada LLC, states as follows:

1.  This Court has jurisdiction of the subject matter of this action pursuant to diversity jurisdiction under 28 USC 1322(a)(1); pursuant to Illinois law, this counter claim would be required to be joined in this action.

2.  The amount in controversy exceeds $100,000.00

3.  That the Counter Plaintiff, MBA Enterprises-2, Inc, an Illinois Corporation, is and has been for some time entitled to possession of a parcel of property located at 1505 N. Neal, Champaign, Illinois, pursuant to a long term lease agreement.

4.  That pursuant to the terms of an agreement with the Counter Plaintiff, MBA Enterprises-2, Inc, an Illinois Corporation, the Counter Defendant, Gateway Studios, LLC, a Nevada LLC, rented the aforesaid premises from the Counter Plaintiff for the amount of $9,500 per month, plus additional payments and consideration payable by the Counter Defendant. (See attached copy of Lease Agreement, attached hereto and marked as Exhibit A).

5.  That the Counter Defendant is currently in possession of the premises.

6.  The Counter Defendant has breach the terms of the aforesaid rental agreement in that the Counter Defendant has failed to pay the monthly rent obligation and further failed to satisfy their share of the real estate taxes due on the property.  That there is currently due to the Counter Plaintiff rents totaling $104,000.00, through September 1, 2007, plus additional payments and consideration payable by the Counter Defendant for use and occupancy of the premises for the months the Counter Defendant has been in possession of the aforesaid premises.  The Counter Defendant is further obligated to reimburse the Counter Plaintiff an amount in excess of $20,000.00 representing the Counter Defendant's share of the 2006 real estate taxes due during the 2007 year.

7. That the Counter Defendant is currently in possession of the premises, and has refused to vacated the property contrary to the terms of the agreement referred to above and notice served by the Plaintiff.

WHEREFORE, the Counter Plaintiff, MBA Enterprises-2, Inc, an Illinois Corporation, prays for judgment against the Counter Defendant, Gateway Studios, LLC, a Nevada LLC, for possession of the property referred to above and for such other and further relief as the court deems necessary and proper.

**THIRD PARTY ACTION FOR DAMAGES**
**<u>ON GUARANTY OF LEASE</u>**
**COUNT I**

Now comes the Third Party Plaintiff, MBA Enterprises-2, Inc, an Illinois Corporation, by and through its attorney, Daniel D. Brown, complaining against the Third Party Defendant, Richard Cheroske, states as follows:

1. This Court has jurisdiction of the subject matter of this action pursuant to the diversity jurisdiction of this Court under 28 USC 1322(a)(1); the Third Party Defendant is a resident and domiciled in the State of California; pursuant to Illinois law, this Third Party claim would be required to be joined in this action.

2. The amount in controversy exceeds $100,000.00

3. That the Third Party Plaintiff, MBA Enterprises-2, Inc, an Illinois Corporation, is and has been for some time entitled to possession of a parcel of property located at 1505 N. Neal, Champaign, Illinois, pursuant to a long term lease agreement.

4. That pursuant to the terms of an agreement with the Counter Plaintiff, MBA Enterprises-2, Inc, an Illinois Corporation, the Counter Defendant, Gateway Studios, LLC, a Nevada LLC, rented the aforesaid premises from the Counter Plaintiff for the

amount of $9,500 per month, plus additional payments and consideration payable by the Counter Defendant. (See attached copy of Lease Agreement, attached hereto and marked as Exhibit A).

5.   That the Counter Defendant is currently in possession of the premises.

6.   The Counter Defendant has breach the terms of the aforesaid rental agreement in that the Counter Defendant has failed to pay the monthly rent obligation and further failed to satisfy their share of the real estate taxes due on the property.  That there is currently due to the Counter Plaintiff rents totaling $104,000.00, through September 1, 2007, plus additional payments and consideration payable by the Counter Defendant for use and occupancy of the premises for the months the Counter Defendant has been in possession of the aforesaid premises.  The Counter Defendant is further obligated to reimburse the Counter Plaintiff an amount in excess of $20,000.00 representing the Counter Defendant's share of the 2006 real estate taxes due during the 2007 year.

7.   That at the time the Third Party Plaintiff entered into the rental agreement with the Counter Defendant, as part of the consideration to entice the Third Party Plaintiff to enter into said rental agreement, the Third Party Defendant, Richard Cheroske, executed a "Guaranty of Lease".  Pursuant to the terms of said guaranty, the Third Party Defendant, Richard Cheroske, agreed to be personally responsible for the financial obligation owed to the Third Party Plaintiff in the event the Counter Defendant was in default on the terms of the Lease Agreement referred to herein.  Said personal guarantee also provided for the payment of attorney fees and cost incurred by the Third Party Plaintiff in enforcement of the terms of the Lease Agreement.

WHEREFORE, the Third Party Plaintiff, MBA Enterprises-2, Inc, an Illinois Corporation, prays for judgment against Richard Cheroske, in the amount of $85,000.00, plus the additional rents due from the Counter Defendant through the date the premises is surrender to the Counter Plaintiff and further moves for judgment for the attorney fees and const incurred by the Third Party Plaintiff in enforcing the terms of the Lease Agreement and further moves for such other and further relief as the court deems necessary and proper.

**DEMAND FOR JURY TRIAL**

The Defendant, Counter Plaintiff and Third Party Plaintiff hereby request trial by jury on all counts and claims asserted and defended herein.

Respectfully submitted,
s/ Daniel D. Brown
Ill. Reg. Disc. #: 06187039
Attorney for Defendants, Counter Plaintiff and
Third Party Plaintiff
Law Office of Daniel Brown
819 N. Sherman Street
Danville, Illinois  61832
Telephone No: (217) 446-4464
Fax No.: (217) 446-9135
E-mail:  dan.brown@danielbrownlaw.com

CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  John F. Bamfeld, Attorney for the Plaintiff.

s/ Daniel D. Brown
Ill. Reg. Disc. #: 06187039
Attorney for Defendants, Counter Plaintiff and
Third Party Plaintiff
Law Office of Daniel Brown
819 N. Sherman Street
Danville, Illinois  61832

Telephone No: (217) 446-4464
Fax No.: (217) 446-9135
E-mail:  dan.brown@danielbrownlaw.com

**E-FILED**
Friday, 28 September, 2007 02:04:07 PM
Clerk, U.S. District Court, ILCD

## LEASE AGREEMENT

THIS LEASE, effective the 14th day of April, 2006, the "Effective Date" between MBA ENTERPRISES - 2, INC., an Illinois corporation, ("Lessor") and Gateway Studios LLC, a Nevada LLC or assigns as set forth herein ("Lessee").

### ARTICLE I - PREMISES LEASED

**Leased Premises** - For and in consideration of the rents herein stated and the covenants and agreements herein contained on the part of the Lessee to be performed, Lessor hereby leases and Lessee hereby accepts from Lessor the premises commonly described as 1505 N. Neil, Champaign, Illinois, which is legally described as:
**See attached legal description**
together with all appurtenances, furniture and fixtures thereto, (the "Premises").

The parties hereto further recognize and acknowledge that the aforesaid premises are the subject of a lease, originally executed on April 11, 1960 and currently assigned to the Lessor herein and that all terms and conditions of this Lease are subject to the terms and conditions of the original lease, a copy of said lease being attached hereto and marked as Exhibit A-1.

### ARTICLE II - LEASE TERM AND USE OF THE PREMISES

**a. Term of Lease** - The term of this Lease shall be for five (5) years, commencing 1st day of May, 2006, which hereinafter shall be referred to as the "takeover date". The lease becomes effective the date it is executed by both parties.

**b. Permitted Use** - The Premises shall be used and occupied for legitimate business and commercial purposes. Lessee shall not use the Premises in any manner that would (a) constitute a public or private nuisance or waste, (b) be unlawful, (c) constitute a public or private nuisance or unreasonably disturb or interfere with other occupants of the Building, (d) materially damage or waste the Premises or materially diminish the value or usefulness of the Premises, or (e) result in the storage, use, generation, release or distribution of Hazardous Materials (as hereafter defined) in violation of applicable laws, regulations, codes or ordinances. If any particular use, activities or operations of Lessee in the Premises should at any time during the Lease Term be prohibited by law or ordinance or other governmental regulation, or prevented by injunction, this Lease shall not be thereby terminated, nor shall Lessee be entitled by reason thereof to surrender the Premises or to any abatement or reduction in rent, nor shall the respective obligations of the parties hereto be otherwise affected, and this Lease shall continue, but Lessee shall cease such use, provided, that if general HoTel classroom or office use is hereafter prohibited by law, ordinance or governmental regulation, either party may thereafter terminate this Lease.





## ARTICLE II - POSSESSION

**Delivery of Possession** - Lessee shall receive possession of the Premises on the Takeover Date and shall remain entitled to retain possession so long as the Lessee is current in all terms and conditions of this agreement. Lessee acknowledges that it is fully familiar with the condition of the Premises and has, prior to the Commencement Date, made such inspections as it desires of the Premises and all factors relevant to its use. Lessee shall accept the Premises in **"AS IS"** condition. Except as expressly provided herein, no representations, warranties or agreements as to the condition or repair of, or improvements to, the Premises have been made by or on behalf of Lessor. Lessee's taking possession of the Premises shall be conclusive evidence that the Premises were suitable for Lessee's intended purposes as of the date of possession, that Lessee accepts the condition of the Premises, and that Lessee waives all claims relating to the condition of the Premises.

**Closing of Bar Business** – The Lessor will have the obligation to close the bar and lounge business operation located upon the premises and will further be responsible for removing all inventories associated with the bar and lounge prior to the Tenant Taking possession of the premises.

## ARITICLE III - RENT

**a. Base Rent** - Lessee shall pay as "Base Rent" for the Lease Term, the annual sum of One Hundred and Eight Thousand Dollars ($108,000.00), as described herein, payable in monthly installments of $9,000.00 per month. Rent is due and payable monthly in advance and without demand, beginning on 1st day of July, 2006, and on the first day of each month thereafter. In addition to the aforesaid rent, the Lessee shall further pay to the Lessor in advance and without demand, beginning on 1st day of July, 2006, and on the first day of each month thereafter the sum of Five Hundred Dollars ($500.00) to satisfy the terms of the original property lease attached hereto and marked as Exhibit A-1; said payment of this monthly amount shall be considered as additional rent as set forth below. Any additional payments which may become due under this Lease, including without limitation, utility and maintenance expenses under Article IV, real estate taxes under Article V, and insurance under Article VI, shall further be deemed to be additional rent, as set forth below, and shall be paid at the same time and place as specified herein.

**b. Additional Rent** - All charges, costs and sums required to be paid by Lessee to Lessor under this Lease, including payments on account of Taxes, utilities and maintenance, and insurance, shall be deemed additional rent ("Additional Rent"). All charges arising from additional rents shall be the responsibility of the tenant as of the takeover date. Base Rent and Additional Rent are hereinafter collectively referred to as "Rent". All payments of rent and additional rent shall be made without any prior demand thereof and without deduction, set-off, discount, or abatement, in lawful money of the United States. Lessee's covenant to pay Rent shall be independent of every other covenant in this Lease. Rent shall be paid to or upon the order of Lessor at the Lessor's Address set forth herein, or as Lessor shall otherwise direct by written notice to Lessee.



2

## ARTICLE IV - UTILITIES, MAINTENANCE, REPAIRS and ALTERATIONS

a. **Utilities** - Lessee shall pay directly to the provider for heat, water, sewage, electricity, gas, garbage service for Lessee's business, and any other public or private utility charges attributable to the Premises and the business enterprise operated upon the premises. This includes the obligation of the Lessee to keep all payments current with the utility provider. The Lessee shall further be responsible for any late charges or any other fees or penalties assessed by the utility provider as a result of a delay in payment of the utility fee.

The parties will arrange for the Lessor's utility providers to read all meters and assess the charges prior to the Lessee's possession of the Premises. The Lessor shall be responsible for all utility charges assessed prior to the Lessee's possession of the Premises; the Lessee shall be responsible for all utility charges assessed after the date of possession of the Premises.

In the event the Lessor becomes responsible for any charges, fees or penalties associated with the utilities provided for the premises after the Lessee assumes possession of the premises, the Lessee will reimburse the Lessor such charges, fees or penalties along with any other damages incurred by the Lessor, including attorney's fees incurred by the Lessor, as a result of the Lessee's delay in payment of a utility cost.

b. **Maintenance and Repairs** - During the term of this Lease, the Lessee shall maintain and keep the Premises in good order and repair. Lessee shall, without limitation, at its sole cost and expense, repair and maintain as necessary all floors, walls, doors, windows and all other building components, both interior and exterior, that are located within and upon the Premises, and keep the Premises in a clean, healthful, lawful and orderly condition. The necessity for or adequacy of maintenance and repairs shall be measured by the standards which are appropriate for improvements of similar construction and class, provided that Lessee shall in any event make all repairs necessary to avoid any damage or injury to the Premises or persons.

c. **Alterations** - Lessee shall not perform any alterations, additions, demolition, installations, or improvements in, on, of or to the Premises costing more than Fifty Thousand Dollars ($50,000.00), without Lessor's prior written consent, which Lessor shall not unreasonably withhold or delay. No alterations shall be permitted that adversely affect the building's system, structure, or otherwise, adversely affect the value or marketability of the premises. Lessee shall furnish to Lessor names and addresses of all general contractors and mechanical and electrical subcontractors, and all contracts for alteration. All Alterations shall be performed in accordance with all applicable laws, codes, regulations, ordinances and rules. All Alterations shall be performed in a good and workmanlike manner by tradesmen skilled in their respective trades, using only new materials.

c - 1. **Ownership and Removal of Alterations** - All Alterations and Lessee's Work shall, upon installation, become part of the Premises, shall be owned by Lessor, and shall, unless Lessor requires their future removal, at time of approval, remain in the Premises at the expiration or termination of this Lease or termination of Lessee's right to possession of the Premises, without compensation or credit to Lessee.



3

c - 2. **Payment for Alterations** - Except as otherwise provided herein, Lessee shall pay the cost of all Alterations. Upon completion of each Alteration, Lessee shall furnish Lessor with customary contractor's affidavits and full and final waivers of lien and receipted bills covering all labor and materials expended and used in connection therewith, and "as built" plans thereof or a certificate from Lessee's architect that the Alterations were performed in accordance with the plans and specifications approved by Lessor.

c - 3 **Liens and Claims** - Lessee agrees to hold Lessor harmless against all mechanic's or materialmen's liens or any other liens, claims and liabilities of every kind, nature and description which may arise out of or in any way be connected with any Alterations. The Lessee shall not allow any claims or liens to be assessed against the Premises.

## ARTICLE V - REAL ESTATE TAXES

**Real Property Taxes** - Lessee shall pay directly all real property taxes and assessments on the Premises incurred after the date of possession by the Lessee. The real estate taxes assessed for the 2005 year shall be the responsibility of the Lessor when they come due in 2006. The real estate taxes for the 2006 year, payable in 2007 shall be prorated as of the date of the Takeover Date and the Lessor and Lessee shall each be responsible for their prorated share of said tax. The 2007 real estate taxes and all subsequent years shall be the responsibility of the Lessee.

Real estate tax and assessment bills shall be addressed to Lessor or the property owner. Lessor shall promptly forward a copy of such bills directly to Lessee upon receipt of same. Lessee and Lessor shall prorate the real estate taxes for the first and last year of the lease, should the Lessee not exercise the options to purchase set forth in the Option to Purchase referenced as Exhibit A.

If a special assessment is levied against the Real Estate, the Lessee obligation to pay the Real Estate Taxes as set forth herein, shall include the obligation to pay such special assessment alone with any additional fees that might be otherwise associated with ownership of the property.

Lessee shall have the privilege, acting in the name of Lessor, before delinquency occurs, of protesting, contesting, objecting to, or opposing the legality or amount of any such taxes, assessments, or public charges to be paid by Lessee hereunder. If Lessee shall, in good faith, deem the same to be illegal or excessive, and in the event of any such contest, he may to the extent provided by law defer payment of any such tax, assessment, fee, or charge so long as the legality or the amount thereof is so contested in good faith. Refund of any tax assessment, fee, or charge so contested shall be paid to Lessee.





4

**ARTICLE VI - INSURANCE**

a. **Property and Casualty Insurance -** Lessee shall maintain in force and shall pay for, at all times during the term of this lease property/casualty insurance, in an amount equal to one hundred percent (100%) of the full replacement value of the Premises, but in no event in an amount less than Two Million Dollars ($2,000,000.00). The aforesaid policy shall list Lessor and property owner as an additional insured pursuant to the terms of the policy. Lessee shall provide Lessor with a copy of the Lessee's certificate of insurance. Each such policy of insurance shall name Lessor and property owners as an additional insured and shall not be canceled without thirty (30) days prior written notice to Lessor.

Lessee shall maintain in force at all times during the term of this Lease such policies of fire and extended coverage insurance on all of its fixtures and equipment in the demised Premises as it deems adequate for the repair and replacement thereof and shall further maintain business interruption insurance appropriate to cover the business operation expenses during any period of reconstruction or repair caused by a fire or other casualty occurring at or upon the Leased premises causing a temporary interruption of the business operation.

All policies of insurance to be kept and maintained in force by the respective parties hereto shall be obtained from a reputable, first-class, national insurance company qualified to do business in the State of Illinois. Lessee shall pay all premiums annually, in advance, and shall provide Lessor with a copy of the policy and paid receipt prior to the Takeover date of coverage.

a - 1. **Property and Casualty Insurance Claims -** All insurance proceeds from any fire or casualty policy or policies shall be payable to Lessor and Lessee, who shall use such proceeds to make repairs as provided below. In the even the insurance proceeds obtained through the policy maintained by the Lessee are insufficient to effectuate the repairs necessary as a result of the incident giving rise to the claim, the Lessee shall assume the additional cost associated with completing the repairs.

Partial Damage: In the event of partial damage or destruction of the demised Premises which shall exceed $100,000 in loss, Lessee shall continue to utilize the Premises for the operation of its business to the extent that it is commercially reasonable to do so. Within 24 hours of the event which causes partial damage or destruction to the premises, the Lessee shall notify the Lessor, in writing, of the event, cause, if determined, and the extent of damage to the premises. In the event the Lessee fails to notify the Lessor of such event, the Lessee will be obligated to pay to the Lessor, any damages, including attorney's fees incurred by the Lessor, which result from the Lessor not being notified of the event.

Substantial or Total Damage: In the event of substantial or total damage (substantial damage being equal to or exceeding two-thirds of the then reconstruction cost of such building as a whole), either party hereto shall have the right to terminate this lease; provided that, in such an event, such termination of this lease shall be effected by written notice to that effect to the other party delivered within thirty (30) days



5



of the happening of such casualty causing the damage. Within 24 hours of the event which causes partial damage or destruction to the premises, the Lessee shall notify the Lessor, in writing, of the event, cause, if determined, and the extent of damage to the premises. In the event the Lessee fails to notify the Lessor of such event, the Lessee will be obligated to pay to the Lessor, any damages, including attorney's fees incurred by the Lessor, which result from the Lessor not being notified of the event.

In the event either party elects to terminate the lease as a result of an event giving rise to substantial or total damage to the premises, the Lessee shall release any claim to and assign to the Lessor, any interest in the insurance proceeds payable as a result of said event.

If, during the term of this Lease, the Premises are damaged or destroyed by fire or by any other cause, Lessee shall, unless otherwise provided herein, upon discovery or notice of the event or occurrence of the casualty, repair or rebuild the premises, including any additions or improvements made by the Lessee with Lessor's written consent, on the same plan and design as existed immediately before such damage or destruction occurred. Materials used in repair shall be as nearly like original materials as may then be reasonably procured in regular channels of supply, provided that any replacements must match the remaining materials as closely as is economically feasible for Lessor.

To the extent that Business Interruption insurance is unavailable to Lessee, the payment of base rent shall be abated during the time the premises is being rebuilt. However, in no event shall this abatement extend for a period in excess of 90 days over the term of this lease.

**b. Liability Insurance** - Lessee shall, at Lessee's expense, at all times during the term of this lease, maintain in force a policy or policies of insurance insuring against liability for injury to or death of persons or loss or damage to property occurring in or about the demised Premises. The limits of liability under each such policy of insurance shall not be less than Two Million Dollars ($2,000,000.00) for any one person, Four Million Dollars ($4,000,000.00) for any one occurrence, and One Million Dollars ($1,000,000.00) for property damage. Each such policy of insurance shall name Lessor and property owners as an additional insured and shall not be canceled without thirty (30) days prior written notice to Lessor.

**c. Evidence of Insurance.** Each policy required to be maintained by Lessee under this Article shall have attached thereto (i) an endorsement that such policy shall not be cancelled or materially changed without at least thirty (30) days prior written notice to Lessor and property owner, and (ii) an endorsement to the effect that the insurance as to the interest of Lessor and property owner shall not be invalidated by any act or neglect of any person. All policies of insurance to be maintained by Lessee shall be written by companies reasonably satisfactory to Lessor and licensed in the State of Illinois. Upon request by the Lessor, the Lessee shall deliver copies of all insurance policies to the Lessor or his agent.

6

## ARTICLE VII - DEFAULT AND REMEDIES

**a. Defaults** - The occurrence of any one or more of the following events shall be considered events of default by Lessee under this Lease:

(1) Lessee shall fail to make any payment of Rent or any other payment required to be made by Lessee hereunder within Fifteen (15) days of when due; or

(2) Lessee shall fail in keeping, observing or performing any of the other covenants or agreements herein contained to be kept, observed and performed by Lessee, and such failure shall continue for thirty (30) days after notice thereof in writing to Lessee; or

(3) Lessee shall make any assignment for the benefit of creditors or shall apply for or consent to the appointment of a receiver for itself or any of its property; or

(4) Lessee shall be adjudged an involuntary bankrupt, or a decree or order for reorganization under the Federal bankruptcy laws as now or hereafter amended, or under the laws of any state, shall be entered against Lessee or Guarantor, and any such decree or judgment or order shall not have been vacated or set aside within sixty (60) days from the date of the entry or granting thereof; or

(5) Lessee shall file or admit the jurisdiction of the court and the material allegations contained in any petition in bankruptcy or any petition pursuant to, or purporting to be pursuant to, the Federal bankruptcy laws as now or hereafter amended, or Lessee shall institute any proceedings for any relief under any bankruptcy or insolvency laws or any laws relating to the relief of debtors, readjustment or indebtedness, reorganization, arrangements, composition or extension; or

(6) The Premises are levied upon by any revenue officer or similar officer as the result of any act or omission of Lessee; or

(7) A decree or order appointing a receiver of all or substantially all of the property of Lessee shall be made and such decree or order shall not have been vacated or set aside within sixty (60) days from the date of entry or granting thereof; or

(8) Lessee shall abandon the Premises or vacate the same during the term hereof for more than thirty (30) consecutive days.

Upon the occurrence of any one or more of such events (each, an **"Event of Default"**), Lessee shall be in default hereunder. Upon a default by Lessee, Lessor shall notify Lessee by certified mail of the Event of Default, and Lessor Shall provide the Lessee with an opportunity to cure such default, including the payment of late fees amounting to Five (5%) Percent of the amount due. If within 30 days, such default continues, Lessor may at its election pursue all legal remedies. Lessee shall pay on demand all reasonable costs and expenses, incurred by Lessor in recovering sums due hereunder, recovering possession of the Premises, or otherwise enforcing this Lease or pursuing Lessor's rights and remedies against Lessee or any assignee, sublessee or other transferee.

**b. Termination of Lease** - If Lessor elects to terminate this Lease prior to the expiration of the five year term of the lease, Lessor shall be entitled to recover as damages all amounts paid by Lessee as of that date, all amounts due and owing relating to base, additional rents, and all other costs relating to unpaid taxes, utilities, or





7

otherwise required under this lease. Lessee shall give Lessor a minimum of 90 days notice prior to Terminating the lease.

c. **Remedies Cumulative** - No remedy herein or otherwise conferred upon or reserved to Lessor shall be considered to exclude or suspend any other remedy, but the same shall be cumulative and shall be in addition to every other remedy given hereunder, or now or hereafter existing at law or in equity or by statute, and every power and remedy given by this Lease to Lessor may be exercised from time to time and so often as occasion may arise or as may be deemed expedient.

d. **No Waiver** - No delay or omission of Lessor to exercise any right or power arising from any default shall impair any such right or power or be construed to be a waiver of any such default or any acquiescence therein. No waiver by Lessor of any default of any of the covenants of this Lease shall be construed, taken or held to be a waiver of any other default, or as a waiver, acquiescence in or consent to any further or succeeding default of the same covenant. The acceptance by Lessor of any payment of Rent or other sums due hereunder after the termination by Lessor of this Lease, or of Lessee's right to possession hereunder, shall not, in the absence of agreement in writing to the contrary by Lessor, be deemed to restore this Lease or Lessee's rights hereunder, as the case may be, but shall be construed as a payment on account, and not in satisfaction of damages due from Lessee to Lessor.

e. **Lessor's Right to Perform Lessee Obligations** - If Lessee shall at any time fail to pay any amount as required under this Lease, fail to take out, pay for, maintain and deliver any of the insurance policies or certificates of insurance provided for in Article VI, or fail to make any other payment or perform any other act or obligation on its part to be made or performed under this Lease, then after thirty (30) days prior written notice to Lessee (or immediately and without notice in case of emergency), Lessor may, but shall not be obligated to, (i) pay any such amount payable by Lessee; (ii) take out, pay for and maintain any of the insurance policies provided for in this Lease Agreement; (iii) make or perform any necessary repairs or replacements to the Premises, or (iv) make any other payment or perform any other act or obligation on Lessee's part to be paid or performed under this Lease. Lessor may enter upon the Premises for any such purpose and take all such action therein or thereon as may be necessary therefor. Nothing herein contained and no such action by Lessor shall be deemed as a waiver or release of Lessee from any obligation of Lessee under this Lease. All sums so paid by Lessor and all costs and expenses, including attorney's fees incurred by Lessor in connection with the performance of any such act together with interest thereon at the Interest Rate from the respective dates of Lessor's making of each payment, shall be paid by Lessee to Lessor on demand. Lessor's damages for such failure of Lessee to maintain insurance shall not be limited to the amount of insurance premiums which would have been payable upon such insurance, but Lessor shall also be entitled to recover the uninsured amount of any loss (to the extent of any deficiency between the dollar limits of insurance required by the provisions of this Lease and the dollar limits of the insurance actually carried by Lessee and Lessor) suffered or incurred by reason of damage to or destruction of the Premises.





8

## ARTICLE VIII - LESSEE'S IMPROVEMENTS

**Lessee Improvement Work** - Lessee shall be entitled, at its sole expense, construct improvements in and around the Premises. The final working plans, specifications and contractors for any Lessee Improvements subject to the provisions of "Article IV c - Alterations" as set forth herein. All such Lessee Improvements shall be the property of Lessor upon installation. Lessee shall promptly and diligently apply for any required building permits, and thereafter promptly and diligently pursue construction of the Lessee Improvements.

## ARTICLE IX - COMPLIANCE WITH LAWS

**Lessee's Compliance with Law and Regulations** - Lessee shall, throughout the Lease Term, at Lessee's expense, promptly comply with, and remove or cure violations of, any and all present and future laws, ordinances, orders, rules, regulations, guidelines and requirements of all Federal, State, Municipal and other governmental bodies having jurisdiction over Lessee, the Premises and the operations or activities conducted therein, regardless of whether the compliance, curing or removal of any such violation and the costs and expenses necessitated thereby shall have been foreseen or unforeseen, ordinary or extraordinary, and whether or not the same shall be presently within the contemplation of Lessor or Lessee or shall involve any change of governmental policy, and irrespective of the costs thereof. Lessee shall comply with the terms and requirements of all permits issued by governmental authorities issued in connection with use or operation of the Premises.

## ARTICLE X. LIENS AND ENCUMBRANCES

**Encumbering Title** - Lessee shall not do any act which shall in any way encumber Lessor's interest in and to the Real Estate, nor shall the interest or estate of Lessor in the Real Estate in any way become subject to any claim by way of lien or encumbrance, whether by operation of law or by virtue of any express or implied contract by Lessee. Any claim to, or lien upon, the Real Estate arising from any act or omission of Lessee other than a claim by Lessor, shall accrue only against the leasehold estate of Lessee and shall be subject and subordinate to the paramount title and rights of Lessor in and to the Real Estate. Lessee shall have no authority to contract for or on behalf of Lessor for any improvements or work.

Lessor shall not encumber the property through any mortgage or security interest of the value of Lessor's interest in the property. Any encumbrance of the property by Lessor shall be subject to the Lessee's interest in the property pursuant to this lease and attachments here to.



9

## ARTICLE XI. INDEMNITY AND WAIVER

**Lessee's Indemnity** - Lessee will protect, indemnify and save harmless Lessor, Lessor's beneficiaries, mortgagees, and their agents, employees, officers and directors, from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses, including, without limitation, reasonable attorneys' fees and expenses, incurred or asserted against the Lessor for any reason and in any way related to the Lessee's lease of the Premises, including but not limited to: (a) any accident, injury to, or death of, persons or loss of, or damage to, property occurring on or about the Premises or any part thereof, or resulting from any act or omission of Lessee or anyone claiming by, through, or under Lessee during the Lease Term; (b) any failure on the part of Lessee to perform or comply with any of the terms of this Lease; (c) the performance of any labor or services or the furnishing of any materials or other property in respect of the Premises or any part thereof performed by or on behalf of Lessee during the Lease Term; or (d) claims, losses, damages, remediation and response costs, clean-up costs and expenses arising out of or in any way relating to Hazardous Materials, as defined hereinbelow, released, deposited, discharged, stored, moved onto, created upon, or removed from the Premises by Lessee, its successors and assigns or their respective agents, employees, licensees and invitees, including, without limitation, (i) claims of third parties, including governmental entities, for damages, penalties, remediation and response costs, clean-up costs, injunctive or other relief; and (ii) costs and expenses relating to remediation, removal and restoration, including fees and costs of environmental engineers, attorneys and experts, audit costs and costs of reporting the existence of Hazardous Materials to any governmental agency.

**Hazardous Materials** - For purposes of this Lease, the term "Hazardous Materials" shall mean and include any and all hazardous, special, medical, toxic or dangerous waste substance or material defined in, or regulated by, the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 USC Section 9601, et. seq.), the Hazardous Materials Transportation Act (49 USC Section 1802, et. seq.) and the Resource Conservation and Recovery Act (42 USC Section 6901, et. seq.) or any other federal, state or local statute, law, ordinance, code, rule, regulation, guideline, order or decree regulating, relating to or imposing liability or standards of conduct concerning the environment or any hazardous, toxic or dangerous waste, substance or material, as now or at any time hereafter in effect (collectively, "Environmental Laws").

**Compliance with Environmental Laws** - Lessee will comply with all Environmental Laws affecting the Premises, and will not cause or permit the Premises to be in violation of any Environmental Laws. Lessee shall provide Lessor with any notices received by any governmental authority with respect to the same. In the event that it is found that Lessee contaminated the Premises or the environment with Hazardous Materials in violation of any Environmental Laws, Lessee shall at its expense take all necessary steps to cause the Premises to be in compliance with all Environmental Laws.

10

## ARTICLE XII. NOTICES

**NOTICES** - Any notice required hereunder shall be by certified mail to the other party at the address shown below. Notices shall be deemed given upon the date of mailing.

TO LESSOR:
MBA Enterprises -2, Inc.
c/o Mr. R. Ariff
1111 S. Wabash Ave #2603
Chicago, IL 60605

TO LESSEE:
Gateway Studios LLC
c/o Robert A. Garmo
124 W. Main Street, Suite 200
El Cajon, CA 92020

COPY TO:
Dan Brown
819 Sherman
Danville, IL 61832

COPY TO:
Stephen Hyde
Wavecrest Properties
8880 Rio San Diego Drive, #800
San Diego, CA 92108

If requested by any mortgagee of Lessor, Lessee will give to such mortgagee copies of all notices required or permitted to be given by Lessee to Lessor.

## ARTICLE XIII. COMPLIANCE WITH EXISTING LEASE

Lessee recognizes that the property identified herein is subject to an "Original Lease", dated April 11, 1960 and subsequently subject to modification, that has previously been assigned to the Lessor herein. Notwithstanding the terms of this agreement, the Lessee shall not take any action or commit any act inconsistent with the terms of said "Original Lease", a copy of which is attached hereto and marked as Exhibit A1, or otherwise engage in any conduct or action that causes a default to or constitutes a violation of the "Original Lease"

## ARTICLE XIV. MISCELLANEOUS

**Late Charges** - Lessee hereby acknowledges that late payments by the Lessee to the Lessor of rent and other sums due herein will cause Lessor to incur cost not contemplated by this Lease, the exact amount of which will be extremely difficult to ascertain. Such cost includes, but are not limited to, processing and accounting charges and late charges which may be imposed upon the Lessor. Accordingly, if any installment or any sum due from the Lessee is not received by the Lessor within Fifteen (15) days of the date it is due, the Lessee shall pay to the Lessor a monthly late charge equal to five (5%) percent of such overdue amount, plus reasonable attorney's fees incurred by the Lessor by reason of the Lessee failure to pay said rent or other charge due pursuant to this Lease.

The parties hereto agree that such late charge represents a fair and reasonable estimate of the cost incurred by the Lessor by reason of the Lessee's late payment. Acceptance of the late charges by the Lessor shall in no event constitute a waiver of



11

any default by the Lessee nor otherwise prevent the Lessor form exercising any of the rights and remedies granted herein or otherwise available under Illinois law.

**Subordination** - This Lease and Lessee's rights are and shall be subject and subordinate to the existing Lease on the Premises originally executed on or about April 11, 1960.

**Survival of Indemnification Obligations** - Unless this Lease specifically provides otherwise, all obligations of indemnification contained in this Lease shall survive the termination or expiration of this Lease.

**Security Deposit/Credit** - Lessee shall provide to Lessor, as security for the Lessee's performance on this Lease, the Personal Guarantee of the principal officers or agents of the Lessee. Said Personal Guarantees have been attached by reference hereto and marked as Exhibit B.

**Assignment/Sublet** - Lessee's shall not be entitled to sub-lease the Premises without the prior written consent of the Lessor, subject to approval by the Property Owner.

**Right of First Refusal** – Should Lessor decide to sell his interest in the property, Lessee shall have the right of first refusal to purchase that interest. Upon written notice by Lessor of his intent to sell his interest, Lessee shall have 30 (30) days to exercise his option to purchase, and 30 additional days to close.

**Eminent Domain** - In the event that a substantial part of the Premises is conveyed because of the exercise of the power of the eminent domain, condemnation or the threat thereof, this Lease may be terminated at the option of the Lessee, as of the date of such conveyance. A substantial part shall be considered to exceed 25% of the leased Premises. If twenty-five percent (25%) or less is so conveyed, and Lessee is able to continue to operate its entire business from the reduced Premises, the parties shall renegotiate those portions of this Lease affected by the conveyance, which negotiations shall include but not be limited to rent abatement, and Premises remodeling and maintenance costs.

**Holding Over** - In the event Lessee holds over after the expiration of the term, or any renewal hereof, Lessee shall become a Lessee from month-to-month upon each of the terms herein as may be applicable to such tenancy. Such holding over shall constitute an extension of this Lease on a month-to-month basis, at a rent equal to that of the most recent monthly installments as specified. The rental obligation during such holding over includes not only the base rent identified in Article III herein but also the utility and maintenance expenses under Article IV, real estate taxes under Article V, and insurance under Article VI.

**Access by Lessor** - Lessor shall have the right to enter upon the leased Premises, upon prior reasonable notice, at reasonable times and for the purpose of making inspections as Lessor shall deem necessary. Lessor shall have access to the leased Premises for the purposes of exhibiting the Premises to others at all reasonable times



12

during the six months prior to the expiration of the term (primary or extended) of the Lease. Except for emergencies, Lessor shall obtain Lessee's consent prior to making entry; such consent shall not be unreasonably withheld.

**Termination** - Upon termination or cancellation of this Lease, and vacancy of the Premises, Lessee shall return the leased Premises to a condition which is similar or better than that prior to occupancy, normal wear and tear excepted.

**Severability** - If any term or provision of this Lease shall to any extent be held invalid or unenforceable, the remaining terms and provisions of this Lease shall not be affected thereby, but each term and provision of this Lease shall be valid and shall be enforced to the fullest extent permitted by law so long as the parties receive the essence of their bargain.

**Entirety** - This Lease constitutes the entire agreement of the parties who acknowledge that no prior contemporaneous or prior written representation made by either party shall be of any force or effect.

**Attorney Fees** - Default by any party to this Lease shall entitle the nondefaulting party to reasonable costs, attorney fees and expenses incurred in connection with judicial enforcement of this Lease.

**Short Form Lease** - Lessee shall not record this Lease; however, a memorandum of lease shall be recorded as of the Effective Date setting forth only the parties, description of the Premises, and the Lease Term, and expiration date.

**Time of Essence** - Time is of the essence of this Lease and all provisions herein relating to time of performance shall be strictly construed.

**Captions** - The captions of this Lease are for convenience only and are not to be construed as part of this Lease and shall not be construed as defining or limiting in any way the scope or intent of the provisions hereof.

**Law Applicable** - This Lease shall be construed and enforced in accordance with the laws of the State of Illinois.

**Covenants Binding on Successors** - All of the covenants, agreements, conditions and undertakings contained in this Lease shall extend and inure to and be binding upon the parties hereto and their permitted successors and assigns.

**Estoppel Certificate** - Lessee shall from time to time, within five (5) days after written request by Lessor, deliver to Lessor or such mortgagee a statement in writing certifying: (i) that this Lease is unmodified and in full force and effect or, if there have been modifications, that this Lease, as modified, is in full force and effect; (ii) the amount of Rent then payable hereunder and the date to which Rent has been paid; (iii) that Lessor is not in default under this Lease or, if in default, a description of such default(s); (iv) that Lessee is or is not in possession of the Premises, as the case may





13

be; (v) that Lessee has no claims, offsets or defenses against Lessor, and (vi) such other information as Lessor may reasonably request.

**Corporate Consent** - Upon the execution of this Lease, Lessor and Lessee shall deliver to Lessor such corporate consents, certificates and other instruments as the other shall reasonably require, to verify the corporate authority to enter into this Lease.

**Amendments Must Be in Writing** - None of the covenants, terms or conditions of this Lease to be kept and performed by either party shall in any manner be altered, waived, modified, changed or abandoned, except by a written instrument, duly signed and delivered by both parties.

**Entire Agreement** - This Lease contains the entire agreement of the parties hereto and no representations, inducements, promises or agreement, oral or otherwise, between the parties not embodied herein shall be of any force and effect. The masculine (or neuter) pronoun, singular number shall include the masculine, feminine and neuter gender and the singular and plural number.

**Counterparts** - This Lease may be executed in multiple counterparts, each of which shall constitute an original, but all of which taken together shall constitute one and the same agreement.

**Venue** - To the maximum extent permitted by law, the parties agree that all actions or proceedings arising in connection with this Lease shall be tried and determined only in the State and Federal courts located in the County of Champaign, State of Illinois. To the maximum extent permitted by law, each party hereby expressly waives any right it may have to assert the doctrine of forum non conveniens or to object to venue to the extent any proceeding is brought in accordance with this Section.

**Jury Waiver** - To the maximum extent permitted by law, each of Lessee and Lessor hereby expressly waives any right to trial by jury of any action, cause of action, claim, demand, or proceeding arising under or with respect to this Lease, or in any way connected with, related to, or incidental to the dealings of Lessor and Lessee with respect to this Lease, in each case whether now existing or hereafter arising, and whether sounding in contract, tort, or otherwise. To the maximum extent permitted by law, each of Lessee and Lessor hereby agrees that any such action, cause of action, claim, demand or proceeding shall be decided by a court trial without a jury and that Lessee or Lessor may file a copy of this Lease with any court or other tribunal as written evidence of the consent of each of Lessee and Lessor to the waiver of its right to trial by jury.

**Arbitration & Mediation Clause** - If a controversy arises with respect to this transaction, Lessor, Lessee, and Agents agree that such controversy shall first be attempted to be settled by mediation.





14

IN WITNESS WHEREOF, Lessor and Lessee have executed this Lease as of the date
first above written.

LESSORS:

_____   4-15-06.
                Secretary
                MB A Enterprises-2 2nd

LESSEE:

Gateway Studios LLC       ATTEST:

By: _____   4/14/06      By: _____
      Richard Cheroske

Its: _Manager_____       Its: _____

**E-FILED**

Friday, 28 September, 2007  02:05:14 PM

Clerk, U.S. District Court, ILCD

## EXHIBIT B - GUARANTY OF LEASE

This Guaranty of Lease ("Guaranty") is executed and effective as of April 6, 2006, pursuant to the terms of that certain Lease ("Lease"), executed concurrently by and between MBA Enterprises-2, Inc. ("Lessor") and Gateway Studios LLC, A Nevada LLC, or Assigns ("Lessee"), which lease relates to certain Premises as described as 1505 N. Neil, Champaign, Illinois and the business operations located upon said premises. Lessee's Guarantor Richard Cheroske ("Guarantor"), is directly benefited by the execution of the Lease. In consideration of such benefits, and as the material inducement to Lessor to enter into the Lease, Guarantor agrees to enter into this Guaranty. Guarantor acknowledges and understands that Lessor would not have agreed to enter into the Lease but for this Guaranty.

1.  Guaranty. As an essential inducement to Lessor's entering into the Lease, Guarantor does hereby absolutely, unconditionally and irrevocably personally guarantee to Lessor, subject to the terms and conditions set forth herein (including, without limitation, the provisions of Section 9 below), the timely payment in full and complete performance by Lessee of all rent, all other charges, and all other obligations and covenants inuring to Lessor's benefit under and arising out of the Lease (collectively, the "Guaranteed Obligations") subject to the limitations enumerated in paragraph 1.5 below. Guarantor acknowledges, covenants, and agrees that (i) he shall be personally bound on this Guaranty to Lessor as if Lessee's obligations under the Lease were the primary obligations of Guarantor hereunder, except to the extent otherwise specifically set forth herein or in a subsequent writing duly signed by Lessor (on a case-by-case basis); and that (ii) this Guaranty shall remain in place, survive the termination of the Lease, and shall continue in full force and effect with respect to any of Lessee's obligations under the Lease which are not fully and completely performed, but only so long and to the extent described below. This is a continuing Guaranty relating to the Guaranteed Obligations, including, without limitation, obligations and liabilities arising under modifications or amendments to the Lease that either increase, decrease, or continue the Guaranteed Obligations, or from time to time renew Guaranteed Obligations that have been satisfied, independent of and in addition to any other guaranty, endorsement, or collateral now or hereafter held by Lessor, whether or not furnished by the Guarantor.



1.5    Notwithstanding the terms and conditions set forth herein, except those set forth in paragraph 5 herein, the Guarantor's obligation to the Lessor, pursuant to this personal guarantee, shall not exceed the sum of Three Hundred Thousand Dollars ($300,000.00). Guarantor's obligation to personally guarantee any sums due to Lessor is effective in only two scenarios; 1) If Lessee does not return the property back to Lessor in a same or better condition than when Lessee took over; or 2) If Lessee does not satisfy any of the terms or conditions set forth in the lease.

2.    Rights of Lessor.    Guarantor agrees that the Lessor may and hereby authorizes Lessor at any time in its discretion to, and without affecting the indebtedness and liabilities of Guarantor hereunder: (i) accept additional or substituted security for the Guaranteed Obligations; (ii) subordinate, compromise, or release any security; (iii) participate in any settlement offered by Lessee or Guarantor, whether in liquidation, reorganization, receivership, bankruptcy or otherwise; (iv) participate in any assignment, sublease, substitution or transfer of Lessee's interest to any lender, third party or affiliated company, with or without a release of Lessee; (v) execute an amendment to the Lease with Lessee; and (vi) execute any New Lease (as that term is used in the Lease) with any lender, or successor thereto. Lessor may take any of the foregoing actions upon any terms and conditions as Lessor may elect, upon giving notice to Guarantor but without obtaining the consent of Guarantor and without affecting the liability of Guarantor to Lessor.

3.    Independent Obligations.    Guarantor's obligations under this Guaranty are independent of those of Lessee or of any other guarantor. Guarantor does hereby waive any and all requirements of notice of breach or non-performance by Lessee. Guarantor does hereby waive any demand by Lessor and/or prior action by Lessor of any nature whatsoever against Lessee. Guarantor's obligations hereunder shall remain fully binding although Lessor may have waived one or more defaults by Lessee, or granted indulgences to Lessee, or extended the time of performance by Lessee, or modified or amended the Lease, or released, returned or misapplied other collateral given later as additional security (including, without limitation, other guarantees), or released Lessee from the performances of its obligations under the Lease, or failed or neglected to exercise any of Lessor's rights against Lessee or any other collateral given to secure the Lease, whether or not Guarantor has received notice of any of the foregoing.

2

4. Default.

    4.1 Each of the following shall constitute a default of Guarantor under this Guaranty:

        4.1.1 - The failure of the Lessee to perform any of its obligation pursuant to the terms of the Lease referred to herein or the failure of Guarantor to perform any of its obligations under this Guaranty;

        4.1.2 - The commencement of any bankruptcy, insolvency, arrangement, reorganization, or other debtor-relief proceeding under any federal or state law by or relating to Lessee or the Guarantor, whether now existing or hereafter enacted;

        4.1.3 - The death of the Guarantor; or

        4.1.4 - the breach of any representation, warranty, or covenant made by Lessee or the Guarantor herein.

5. Costs and Expenses. Guarantor agrees to pay Lessor's reasonable out-of-pocket costs and expenses, including but not limited to legal fees and disbursements and expert witness fees and disbursements, incurred in the administration of this Guaranty and any effort to collect or enforce any of the Guaranteed Obligations or this Guaranty, regardless of whether a lawsuit is filed against Lessee or Guarantor. The obligations of Guarantor under this Section 5 shall include payment of Lessor's costs and expenses of enforcing any judgment, which obligations shall be severable from the remaining provisions of this Guaranty and shall survive the entry of judgment.

6. Reinstatement. The liability of Guarantor hereunder shall be reinstated and revived, and the rights of Lessor shall continue, with respect to any amount at any time paid on account of the Guaranteed Obligations which Lessor shall thereafter be required to restore or return in connection with the bankruptcy, insolvency or reorganization of Lessee, or Guarantor, or otherwise, all as though such amount had not been paid. The determination as to whether any such payment must be restored or returned shall be made by Lessor in its sole discretion. Lessor shall be under no obligation to return or deliver this Guaranty to Guarantor, notwithstanding the payment of the Guaranteed Obligations. If this Guaranty is nevertheless returned to Guarantor or is otherwise released, then the provisions of this Section 6 shall survive such return or release, and the liability of Guarantor under this Guaranty shall be reinstated and continued under the circumstances provided in this Section 6 notwithstanding such return or release.

7. Representations and Warranties. Guarantor makes the following representations and warranties, which shall be deemed to be continuing representations and warranties until payment and performance in full of the Guaranteed Obligations:



3

7.1 - Guarantor has all the requisite power and authority to execute, deliver, and be legally bound by this Guaranty on the terms and conditions herein stated.

7.2 - This Guaranty constitutes the legal, valid, and binding obligations of Guarantor enforceable against Guarantor in accordance with its terms.

8. Term. The Guaranty shall commence upon the execution of the Lease by Lessee and continue in effect for all claims and occurrences accruing until the expiration of the lease or any extensions thereto.

9. Notice. All notices and other communications provided for hereunder shall be in writing (including telecopied communications) and mailed or delivered to the parties at Lessor's address designated in the Lease or at Guarantor's address as set forth in the Lease and on the signature page hereto, or, as to each party, at such other address as shall be designated by such party in a written notice to the other parties complying as to delivery with the terms of this Section 10. All such notices and communications, if mailed, shall be effective two (2) business days after deposit in the United States mail, first-class postage prepaid; and if delivered in another way, shall be effective upon receipt.

10. Miscellaneous. No provision of this Guaranty or Lessor's rights hereunder can be waived or modified nor can Guarantor be released from its obligations hereunder except by a writing executed by Lessor. No such waiver shall be applicable except in the specific instance for which given. No delay or failure by Lessor to exercise any right or remedy against Lessee or Guarantor will be construed as a waiver of that right or remedy. All remedies of Lessor against Lessee and Guarantor are cumulative. The invalidity or unenforceability of any one or more provisions of this Guaranty will not affect the validity or enforceability of any other provision. This Guaranty shall be governed by and construed under the laws of the State of Illinois. The provisions of this Guaranty will bind and benefit the heirs, executors, administrators, legal representatives, successors and assigns of Guarantor and Lessor. The term "Lessee" will mean only the named Lessee in the Lease which is the subject of this guarantee. The term "Lessor" will mean both the Lessor named herein and any future owner or holder of the Lease, or any interest therein. This Guaranty constitutes the entire agreement between Guarantor and Lessor with respect to its subject matter, and supersedes all prior or contemporaneous agreements, representations and understandings. All headings in the Guaranty are for convenience only and shall be disregarded in construing the substantive provisions of this Guaranty.

4

INTENDING TO BE BOUND, the undersigned Guarantor has executed this Guaranty
where provided below as of the date first above written.

LESSOR: MBA Enterprises-2 Inc.          LESSEE: _Richard Chuoske_ 4/14/06

By: _____                     By: _Richard Chuoske_

                    4-15-06

Title: _Secretary_                       Title: _Individual / Manager_

                                         Guarantor:

                                         _Richard Chuoske, individual_
                                         _Richard Chuoske_ 4/14/06

5